1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

DARNELL FOSTER, et al.,

               Plaintiffs,

    v.

CITY OF OAKLAND, et al.,

               Defendants.

_____

This Document Relates To:

_____

JAMES TAYLOR, et al.,

               Plaintiffs,

    v.

CITY OF OAKLAND, et al.,

               Defendants.

_____

JIMMY RIDER, et al.,

               Plaintiffs,

    v.

CITY OF OAKLAND, et al.,

               Defendants.

_____

**OPINION**

**No. C 05-3110  MHP**

No. C 04-4843 MHP

No. C 05-3204 MHP

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

| | |
|---|---|
| 1 | TYRONE MOORE, |
| 2 | Plaintiff, |
| 3 | v. |
| 4 | CITY OF OAKLAND, et al., |
| 5 | Defendants. |
| 6 | JEFFRIE MILLER, et al., |
| 7 | Plaintiffs, |
| 8 | v. |
| 9 | CITY OF OAKLAND, et al., |
| 10 | Defendants. |

No. C 06-2426 MHP

No. C 07-1773 MHP

Plaintiffs Darnell Foster, Rafael Duarte and Yancie Young have brought this action pursuant to 28 U.S.C. section 1983 against the City of Oakland ("Oakland"); Richard Word, individually and in his capacity as the Oakland Chief of Police; Oakland police officers J. Festag and William Bergeron, individually and in their official capacities as police officers; and Does 1–25, alleging that defendants violated plaintiffs' constitutional rights through a policy and practice of performing strip searches and body-cavity searches in public. Plaintiffs seek both injunctive relief and damages. Foster v. City of Oakland, Case No. C 05-3110 MHP, has been related to four similar cases pending in the Northern District of California, and this order applies to each of them.[1] Now before the court is plaintiffs' motion for partial summary judgment. After considering the parties' arguments and submissions and for the reasons set forth below, the court rules as follows.

BACKGROUND[2]

I.      The Parties

The following order pertains to all of the parties in Foster and the related cases. A description of the claims brought by the three plaintiffs in Foster is included below and is representative of the claims in the related cases brought by plaintiffs James Taylor, Robert Forbes,

Jimmy Rider, Tyrone Moore, Deandre Wash, Jason Cagler, Jomal Reed, Curtis Freeman, Glenn Lovely, Jeffrie Miller, Kevin Bradley and Richard Tillman.

A.    Plaintiff Darnell Foster

Plaintiff Foster is an African-American man.  On February 27, 2004 Foster was visiting a friend in Oakland, California.  At that time, he had served all but two months of a five year unsupervised probation sentence without incurring any violations.

At around 3 p.m. of that day, Officer Festag and another unknown officer stopped Foster outside the School Market on Oakland's School Street near Pleitner Avenue.  The officers asked Foster for identification, which he showed to them.  The officers also asked whether Foster was on probation or parole, which he answered affirmatively.  Officer Festag then handcuffed Foster and forced him against the back of his patrol vehicle parked in front of the School Market.  Foster was ordered to spread his legs and Officer Festag searched Foster's pockets.  No contraband was found.  Officer Festag then guided Foster into the rear of the patrol vehicle.  The officers ran a warrant check and searched the area for evidence of illegal activity.  The searches revealed no warrants or evidence of wrongdoing.

Foster was then removed from the patrol vehicle by Officer Festag, who forced Foster over the hood of the vehicle.  Wearing a latex glove retrieved from the vehicle's trunk, Officer Festag pulled Foster's pants and underwear down to his knees.  Officer Festag proceeded to search around Foster's testicles using his gloved hand.  The officer also spread Foster's buttocks and visually searched Foster's anus, stating "I'm going to do a butt-crack search, see if you got crack in your butt-crack."  Foster Compl. ¶ 5.  No contraband was discovered.

The officers then pulled Foster's pants and underwear back up and returned him to the rear of the vehicle.  Officer Festag drove about two blocks and stopped the patrol vehicle to request that Foster make an undercover drug purchase. Foster refused to work undercover for the officers and repeatedly denied wrongdoing.  The officers then issued Foster a citation for loitering with the intent to sell narcotics before releasing him.

UNITED STATES DISTRICT COURT
For the Northern District of California

3

UNITED STATES DISTRICT COURT
For the Northern District of California

Several months later, in May, Foster received a Notice to Appear in criminal court in Oakland on the citation issued by Officer Festag. The charge was subsequently dismissed due to the absence of both the officers to substantiate the allegation against Foster. Foster filed an Internal Affairs complaint against Officer Festag in July 2004. On August 1, 2005 Foster and another plaintiff filed a complaint alleging violations of their civil rights under 42 U.S.C. section 1983.

B.      Plaintiff Rafael Duarte

Plaintiff Duarte is an Hispanic-American man. On the afternoon of March 9, 2005, while driving, Duarte and a friend were forced to a stop on Oakland's Baker Street, between 62nd and 63rd Streets.

Unknown officers emerged from two vehicles and pulled Duarte from the friend's car without giving any orders. Duarte was handcuffed and forced against the hood. Duarte was then escorted by the first officer to the front of a nearby house, where several other unknown officers were also present. The first officer repeatedly pat-searched Duarte, but the search yielded no contraband.

A second officer then informed the first officer that he thought he had seen Duarte "stuff something down his pants." Foster Compl. ¶ 7. The officers pulled down Duarte's pants and ordered him to bend over. Duarte's buttocks were spread, permitting visual inspection of his anus. No contraband was found, but Duarte was placed in the rear of a police vehicle. The officers then performed a strip and visual body cavity search on Duarte's friend. That search also yielded no contraband. During the searches of the two men, a crowd had begun to gather around the scene, including some people with whom Duarte was acquainted. The individuals witnessed the searches of both men.

Duarte was taken to Oakland City Jail and cited after about two hours in custody. No charges were ever filed against Duarte. On August 1, 2005 Duarte and other plaintiffs filed charges alleging violations of their civil rights under 42 U.S.C. section 1983.

4

C.      Plaintiff Yancie Young

Plaintiff Young is an African-American man.  At approximately 11:30 p.m. on September 30, 2003 Young was pulled over by Officer Bergeron around the 2800 block of West Street in Oakland.  Officer Bergeron opened Young's car door, pulled him out of the car and handcuffed him. Officer Bergeron asked Young if he was on probation or parole, which Young denied.  Officer Bergeron insisted that he smelled marijuana in Young's car and suggested that Young was smuggling large quantities of the drug.

Officer Bergeron then took Young to the back of a police car.  While facing Young, he pulled down Young's pants and underwear, revealing Young's genitalia.  Then Officer Bergeron shined a flashlight directed at Young's genitalia, visually inspecting Young for up to a minute. Officer Bergeron next performed a pat-search of Young, ordered Young to remove his shoes and felt Young's private area through his pants.  Another officer searched Young's car during the search of Young's person.  No contraband was found.

Officer Bergeron seated a handcuffed Young in the back of a police car, where he sat for over one hour.  During that time, Officer Bergeron, other officers and a police canine searched Young's car.  That search produced no evidence of criminal activity.

No charges were filed against Young.  Young subsequently filed a complaint with the Citizens' Police Review Board.  The Board found that Officer Bergeron performed an unlawful strip search of Young.  Young filed a complaint on August 1, 2005.


D.      Defendants

Defendant Oakland is a municipal corporation, which operates the Oakland Police Department ("OPD") and employs the additional defendants named below.  Defendant Richard Word is Chief of Police for Oakland.  Plaintiffs have sued him in both his individual and official capacities. Defendants Brett Estrada, Steven Nowak, Chris Moreno, Leonel Sanchez, Sven Hamilton, B.J. Festag, William Bergeron, Malcolm Miller, Douglas Keeley, Douglas Aitchison, Gregory Loud, Sean Bowling, Wayne Tucker, R. Alcantar, O. Crum, J. Foreman, L. Leonis,  S.

5

1    Valle and Does 1-25 were police officers for Oakland at all times mentioned herein.  They have been

2    sued in both their individual and official capacities.[3]

3                    1.    Oakland Police Department's Policy Before 2004

4          The Oakland Police Department's 1998 policy, entitled "Strip Searches, Visual Body-Cavity

5    Searches, and Physical Body-Cavity Searches" appears in the OPD's 1998 Training Bulletin.[4]

6    Defs.' Opp., Exh. A ("1998 Policy").   The policy begins by defining the terms "strip search,"

7    "visual body-cavity search" and "physical body-cavity search."   Id. at 8.   A strip search is "any

8    search that requires the officer to remove or arrange some or all of a person's clothing to permit a

9    visual inspection of the subject's underclothing, breasts, buttocks, or genitals."   Id.   A visual body

10   cavity search is "a search which consists of the visual inspection of the subject's rectal cavity and, if

11   the subject is a female, vagina.  A visual body-cavity search does not include a search of the mouth."

12   Id.  A physical body cavity search is "a search which consists of the physical intrusion into a body

13   cavity for the purpose of discovering a concealed object."   Id.   The policy next stipulates that four

14   requirements must be met before a strip search or a visual body cavity search may be performed: (1)

15   "[t]he person to be searched must be under arrest and ultimately booked;" (2) "[t]he arrest must be

16   for an offense involving weapons, controlled substances, or violence;" (3) "[t]he person conducting

17   the search must be of the same sex as the person searched;" and (4) "[t]he search must be conducted

18   in a private area where it cannot be observed by persons not participating in the search."   Id.

19   Additionally, the policy specifies that a physical body cavity search requires a warrant.   Id.

20         The Bulletin also discusses the permissible scope of pat searches and the requirements for

21   searches incident to arrest.   Id. at 2–8.   To perform a search incident to arrest, three requirements

22   must be met: (1) "[t]he arrest must be legal;" (2) "[t]he search must be contemporaneous with the

23   arrest;" and (3) "[t]he arrest must be custodial."   Id. at 7.   The policy on searches incident to arrest

24   also states that an officer may search a person for contraband with probable cause.   Id.

25                    2.    Oakland Police Department's Amended Policy

26         In 2004 the Oakland Police Department amended its policy on strip and body-cavity

27   searches.  The amendments came in response to public concerns regarding the Department's practice

28

1   of carrying out such searches.  The Department publicly identified a "long-standing and problematic

2   practice of conducting strip searches in the field."  Burris Dec., Exh. C at 4.

3        Similar to the 1998 Policy, the 2004 Training Bulletin defines the three types of strip

4   searches, discusses the permissible scope of pat searches and outlines the requirements for searches

5   incident to arrest.  Id., Exh. G ("2004 Policy") at 1–6.  Specifically, the 1998 requirements for

6   performing a strip search were significantly amended in 2004.  Id. at 6.  In the 2004 Bulletin, the

7   section relevant to strip searches is entitled "Strip Searches in the Field."  Id.  The policy stipulates

8   that a "strip search incident to an arrest" may only be performed when: (1) "[i]t is reasonable to

9   believe that the arrestee is concealing a weapon;" or (2) "it is reasonable to believe that the arrestee

10  is concealing evidence or contraband;" and (3) "that evidence may be destroyed or ingested unless it

11  is immediately recovered."  Id. (emphases omitted).  The policy goes on to say that warrantless strip

12  searches "are not justified by the arrest itself," and that one must have "reasonable suspicion that the

13  arrestee has concealed a weapon, contraband or evidence."  Id. (emphasis omitted).

14       Additionally, the 2004 Policy states that a strip search in the field may not be performed

15  unless the following requirements are met: (1) the officer has "reasonable suspicion to believe the

16  arrestee is hiding or concealing evidence, a weapon, or contraband;" (2) the officer is "of the same

17  sex as the arrestee unless there is an exigency and an officer of the same sex is not available to

18  respond;" (3) the officer "may not have physical contact with the arrestee except contact that is

19  reasonably necessary to search for and recover items and to control or direct the arrestee;" (4) "the

20  search must be conducted so that the search cannot be easily observed by the public," and

21  "reasonable efforts must be made to provide as much privacy as possible;" and (5) the officer "must

22  document the search and the need to conduct the search in the field in the appropriate report."  Id.

23  at 7 (emphases omitted).  Notably, the 2004 Policy explicitly prohibits officers from ever conducting

24  a physical or visual body cavity search in the field.  Id.

25

26

27

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

7

### 3. Oakland Police Department's Alleged Practice

Plaintiffs allege that there is a widespread practice of public strip and body cavity searches within the Oakland Police Department that deviates from the Department's recently revised policy. Plaintiffs claim that this practice occurs without regard to the privacy of subjects being searched. Subjects' genitalia, buttocks, and/or anuses are exposed, often without any screen from public view. This practice allegedly targets racial minorities—especially Hispanic- and African-Americans.

## II. Procedural History

Plaintiffs Foster and Duarte filed the present action on August 1, 2005. Pursuant to stipulations, plaintiffs filed an amended complaint on September 22, 2005 adding plaintiff Young. Additionally, the following actions were related to this action: (1) Rider v. City of Oakland, No. C 05-3204 MHP, related on October 6, 2005; (2) Taylor v. City of Oakland, No. C 04-4843 MHP, related on October 6, 2005; (3) Moore v. City of Oakland, No. C 06-02426 MHP, related on July 12, 2006; and (4) Miller v. City of Oakland, No. C 07-1773 MHP, related on April 17, 2007.

Plaintiffs' motion to certify a class was denied on January 27, 2007 for failure to satisfy the requirement of numerosity. Docket No. 42. Plaintiffs now move for partial summary judgment on the following grounds: 1) declaratory relief that the 1998 Policy is unconstitutional; 2) declaratory relief that the 2004 amended Policy is unconstitutional; 3) judgment that any search in accordance with either of the policies is unconstitutional; 4) summary judgment on the issue of liability in favor of plaintiffs. Plaintiffs have not moved for summary judgment on claims related to the OPD's alleged practice.

## LEGAL STANDARD

Summary judgment is proper when the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

UNITED STATES DISTRICT COURT
For the Northern District of California

genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.  The party moving for summary judgment bears the burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).  On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case."  Id.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  Mere allegations or denials do not defeat a moving party's allegations.  Id.; Gasaway v. Nw. Mut. Life Ins. Co., 26 F.3d 957, 960 (9th Cir. 1994).  The court may not make credibility determinations, and inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the motion.  Masson v. New Yorker Magazine, 501 U.S. 496, 520 (1991); Anderson, 477 U.S. at 249.

The moving party may "move with or without supporting affidavits for a summary judgment in the party's favor upon all [claims] or any part thereof."  Fed. R. Civ. P. 56(a).  "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e).

DISCUSSION

Plaintiffs seek partial summary judgment on four grounds: 1) declaratory relief that the 1998 Policy is unconstitutional; 2) declaratory relief that the 2004 amended Policy is unconstitutional; 3) judgment that any search in accordance with either of the policies is unconstitutional; 4) summary judgment on the issue of liability in favor of plaintiffs.  The thrust of plaintiffs' argument is that the OPD policies should be found unconstitutional as a matter of law because the policies: 1) do not allow for individualized suspicion; 2) permit invasive searches of an arrestee's person upon less than

probable cause; 3) do not adequately protect a suspect's constitutionally protected right to physical privacy; and 4) permit warrantless searches in circumstances in which a warrant is required.

I.      Fourth Amendment Requirements

        The instant action presents an issue of first impression to the extent that it implicates Fourth Amendment restraints on strip searches performed outside the traditional setting of a police station or detention facility.  Before addressing the constitutionality of the OPD's 1998 and 2004 strip search policies, it is useful to review the case law describing the requirements of the Fourth Amendment in similar contexts.  The Supreme Court has noted that there is no precise formula for reconciling the competing interests of law enforcement and individual privacy with respect to searches and seizures:

> The test for reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application.  In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails.  Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

Bell v. Wolfish, 441 U.S. 520, 559 (1979).

        "State law is also relevant in analyzing the reasonableness of a search under the Fourth Amendment."  Edgerly v. City and County of San Francisco, 495 F.3d 645, 656 (9th Cir. 2007).

        The Ninth Circuit has had occasion to determine the constitutionality of various strip search policies employed by law-enforcement agencies.  See, e.g., Giles v. Ackerman, 746 F.2d 614 (9th Cir. 1984); Kennedy v. Los Angeles Police Dep't, 901 F.2d 702 (9th Cir. 1990); Fuller v. M.G. Jewelry, 950 F.2d 1437 (9th Cir. 1991).  There are two significant differences between the policies examined in this line of cases and the policy at issue in the instant action.  First, the policies considered in those cases were blanket strip search policies requiring that an arrestee be subjected to a strip search if the arrestee met certain criteria, e.g., if the arrestee was arrested on suspicion of committing a felony.  See, e.g., Kennedy, 901 F.2d at 713 (holding that the Los Angeles Police Department's blanket cavity search policy for felony arrests was unconstitutional).  The OPD

UNITED STATES DISTRICT COURT
For the Northern District of California

policies do not require that a strip search be performed at any time; they only define when a strip

search is permissible.  1998 Policy at 8; 2004 Policy at 6–7.  Where the Ninth Circuit has found

blanket strip search policies to be unconstitutional, they have done so pursuant to the Supreme

Court's balancing test articulated in Bell.  To be clear, the OPD policies are not blanket strip search

policies, and therefore do not risk violating the Supreme Court's balancing test on that ground.

Second, the previous cases have all considered strip search policies that contemplate searches

occurring post-arrest and pre-booking at a police station or other detention facility.  See Giles, 746

F.2d at 617 (strip search of woman at county jail pursuant to a blanket jail policy held

unconstitutional); Kennedy, 901 F.2d at 713 (strip search of woman at jail pursuant to a blanket jail

policy held unconstitutional); Fuller, 950 F. 2d at 1449–50 (strip search of woman at Los Angeles

Police Department central station pursuant to a blanket policy held unconstitutional).  None have

considered strip searches occurring in the field.[5]

The term "strip search" has been variously defined by applicable law.  It is specifically

defined by the California Penal Code, section 4030(c) as "a search which requires a person to

remove or arrange some or all of his or her clothing so as to permit a *visual* inspection of the

underclothing, breasts, buttocks, or genitalia of such person." (emphasis added).  It is this definition

the court uses here.  In fact, the Ninth Circuit in Edgerly described California's definition of "strip

search" as reasonable and instructed that it "informs our Fourth Amendment Analysis."  495 F.3d at

656.

Section 4030(d) of the California Penal Code defines other searches that are more instrusive:

"(2) '[v]isual body cavity search' means visual inspection of a body cavity [defined as stomach,

rectal cavity or vagina]. (3) '[p]hysical body cavity search' means physical intrusion into a body

cavity for the purpose of discovering any object concealed in the body cavity."

Courts have taken note of the intrusive nature of strip searches, especially body cavity

searches, on numerous occasions.  The Ninth Circuit observed that "[t]he intrusiveness of a body-

cavity search cannot be overstated.  Strip searches involving the visual exploration of body cavities

is [sic] dehumanizing and humiliating."[6]  Kennedy, 901 F.2d at 711.  Justice Marshall remarked in

UNITED STATES DISTRICT COURT
For the Northern District of California

1    <u>Bell</u> that visual body cavity searches "represent one of the most grievous offenses against personal

2    dignity and common decency." 441 U.S. at 576–77 (Marshall, J., dissenting). The majority in <u>Bell</u>

3    commented that "[a]dmittedly, this practice instinctively gives us the most pause." <u>Id.</u> at 558.

4           The constitutional requirements for performing the three types of strip searches differ.

5    Physical body cavity searches are the most invasive, and, therefore, are subject to the strictest

6    requirements. California Penal Codes section 4030(k) requires that a physical body cavity search be

7    performed by an authorized medical professional. The Supreme Court has commented in the

8    context of searches and seizures that "serious questions . . . would arise if a search involving use of a

9    medical technique, even of the most rudimentary sort, were made by other than medical personnel or

10    in other than a medical environment—for example, if it were administered by police in the privacy

11    of the stationhouse." <u>Schmerber v. California</u>, 384 U.S. 757, 771–72 (1966). The Ninth Circuit has

12    found physical body cavity searches of inmates to be unreasonable where they were performed by

13    inadequately trained medical assistants, holding that "issues of privacy, hygiene, and the training of

14    those conducting the searches are relevant to determining whether the manner of the search was

15    reasonable." <u>Vaughan v. Ricketts</u>, 859 F.2d 736, 741 (9th Cir. 1988). It is clear in this Circuit that

16    physical body cavity searches may only be conducted upon probable cause and, absent an

17    emergency, a search warrant is ordinarily required. <u>Fuller</u>, 950 F.2d at 1449. In <u>Fuller</u>, the Ninth

18    Circuit held that the <u>Schmerber</u> requirement that a warrant be obtained prior to performing a blood

19    test on an arrestee should apply with equal force to physical body cavity searches. <u>Id.</u> The court

20    concluded that "'[t]he interests in human dignity and privacy' invaded when a public official peers

21    inside a persons's body cavity are at least as great as those invaded by a needle piercing the skin."

22    <u>Id.</u> at 1449 (quoting <u>Schmerber</u>, 384 U.S. at 769–70).

23           With respect to visual body cavity searches, such searches may be conducted upon

24    reasonable suspicion that a particular arrestee harbors weapons or dangerous contraband. The

25    purpose of this policy is to ensure that weapons, drugs or other contraband that would pose a threat

26    to the safety or the security of the penal institution are not introduced into the facility. Thus, the

27    question of such a search arises when the arrestee is brought into a jail or similar institution. Here,

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1   courts have distinguished among those being admitted into the general inmate population and those

2   who are awaiting bail or release.  See, e.g., Dobrowolskyj v. Jefferson County, 823 F.2d 955 (6th

3   Cir. 1987) (strip search upheld where detainee was not searched until he was going to be moved to

4   general jail population); Logan v. Shealy, 660 F.2d 1007 (4th Cir. 1981) (strip search of detainee

5   was held unconstitutional where he was not to be admitted to general jail population).

6          In Fuller, the Ninth Circuit noted that institutional considerations—such as the safety of the

7   broader inmate population—justified visual body cavity searches on less than probable cause.  950

8   F.2d at 1447 ("[S]trip and body cavity searches of detainees may be conducted on reasonable

9   suspicion only where such searches are necessary to protect the overriding security needs of the

10  institution").  The court declined to extend the reasonable suspicion standard to body cavity searches

11  for stolen property, which did not implicate these institutional concerns.  Id. at 1448.  Thus, in Fuller

12  smuggling a ring into a detention facility was not considered a security concern, and, therefore, the

13  Ninth Circuit held that probable cause was required for such a search.  Most recently the Ninth

14  Circuit reaffirmed in Edgerly that *arrestees* charged with only minor offenses may be subjected to

15  strip searches "'only if jail officials possess a reasonable suspicion that the individual arrestee is

16  carrying or concealing contraband.'"  495 F.3d at 656 (quoting Fuller, 950 F.2d at 1446).

17         Courts have not often discussed the requirements for performing strip searches that do not

18  rise to the level of physical or visual body cavity searches.  However, they often lump them all

19  together with visual body cavity searches as the court did in Fuller, finding that such searches may

20  be conducted in an institutional setting where there is reasonable suspicion that the arrestee

21  possesses weapons or dangerous contraband such as drugs but that probable cause is required for

22  body cavity searches for ordinary evidence.  Most cases dealing with strip searches have involved

23  such searches occurring at a jail, police station or other place where the arrestee will be held in

24  custody.  Courts have also made a distinction between arrestees being admitted into the general jail

25  population and those simply awaiting bail or other custodial arrangements requiring less security

26  concerns.  Very few have involved strip searches performed in the field.  Furthermore, all of the

27  cases speak to strip searches of persons who have been arrested.  Courts have authorized what is

28

13

called a "full search of the person" in the field, however, when that search has been incident to arrest. United States v. Robinson, 414 U.S. 218, 235 (1973).  The extent of the search in Robinson was limited to a pat-down and examination of the *arrestee's* pockets, with the Court noting that the search was after a "full-custody arrest."  Id. at 237 n.6.

What is clear from a review of the case law is that a strip search may be conducted under the following circumstances:

1) the subject has been arrested, brought to a jail or similar custodial situation and will be placed in the general custodial population or under similar housing conditions;

2) there is a reasonable suspicion that the subject is secreting drugs or weapons and that reasonable suspicion is based on the nature of the offense, the subject's appearance and conduct and the subject's prior arrest record; and

3) the search complies with the necessary privacy and health precautions discussed above.

What is not clear is the extent to which a strip search may be conducted in the field.  There is no case law suggesting that such a search may be performed in the absence of an arrest.  All of the cases are premised on there being an arrest, not merely a detention or a stop for questioning.  An arrest must be based on probable cause and may thus justify some type of search depending on the circumstances.  However, detentions and stops that are short of an actual arrest will not support a strip search or, indeed, any kind of search except for a *Terry* search when the standards of Terry v. Ohio, 392 U.S. 1 (1968), justify a *Terry* stop.  Given the limits on strip searches even in a jail setting, certainly the limitations are greater when the search is in the field  pursuant to a valid arrest. It is clear that the "full search" authorized by Robinson is ordinarily conducted for the officers' safety.  A "full search" incident to arrest, however, does not permit a strip search or bodily intrusion. Like the searches in Fuller, the searches in the instant case are unrelated to prison security.  Field strip searches by definition occur before a suspect has arrived at a detention facility.  And even after the arrestee has arrived at the facility, security concerns may not be great enough to justify invasive searches upon reasonable suspicion if the detainee is not to be admitted to the general jail population or the search is merely for evidence.  Fuller, 950 F.2d at 1448.  Only after an arrestee has arrived at

14

UNITED STATES DISTRICT COURT
For the Northern District of California

a detention facility does institutional security become a factor, thereby permitting searches for weapons or contraband based upon reasonable suspicion.  Prior to his arrival at the facility, an arrestee poses no threat to prison security, and officers in the field are adequately protected by their ability to perform security searches incident to arrest.

Therefore, the court concludes that officers in the field are generally limited to a search incident to arrest as described in <u>Robinson</u> and that strip and more invasive searches in the field may only be performed under exigent circumstances and with probable cause which may, consistent with the above, require a warrant.  In sum, the court concludes that the Fourth Amendment requirements for the three types of strip searches performed in the field—strip search, visual body cavity search and physical body cavity search—are as follows:

1) there must be exigent circumstances;

2) the search may only be performed on persons who have been lawfully arrested on probable cause and may not be performed on anyone for whom there is no probable cause to arrest;

3) the search requires probable cause that is independent of the probable cause found for the arrest;[7]

4) the search may only be performed when there is probable cause to believe that the arrestee is in possession of weapons, drugs or dangerous contraband; and

5) additionally, physical body cavity searches require a warrant authorizing the search and must be administered by an authorized medical professional.

II.      1998 Policy

Plaintiffs contend that the 1998 OPD Policy does not pass constitutional muster for four reasons: 1) the policy fails the balancing test required by the Supreme Court in <u>Bell</u>; 2) the policy permits invasive searches of an arrestee's person upon less than probable cause; 3) the policy does

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1    not adequately protect a suspect's constitutionally protected right to physical privacy; and 4) the

2    policy permits warrantless searches in circumstances in which a warrant is required.

3         Plaintiffs' first argument is unpersuasive.  As discussed above, only blanket policies

4    requiring strip searches at detention centers have been found unconstitutional under Bell, and the

5    1998 OPD Policy contains no such requirement.  See, e.g., Giles, 746 F.2d at 617; Kennedy, 901

6    F.2d at 713; Fuller, 950 F.2d at 1449–50.  Because the 1998 Policy outlines when a strip search may

7    be performed and requires individual determinations of suspicion, it allows for the balancing of

8    security and privacy interests required by Bell.

9         Plaintiffs' second argument is that the 1998 Policy allows for strip searches on less than

10   probable cause.  Plaintiffs claim that the policy allows strip searches to be performed upon the

11   satisfaction of only the four requirements outlined in the OPD's Training Bulletin section entitled

12   "Strip Searches, Visual Body-Cavity Searches, and Physical Body-Cavity Searches:" (1) "[t]he

13   person to be searched must be under arrest and ultimately booked;" (2) "[t]he arrest must be for an

14   offense involving weapons, controlled substances, or violence;" (3) "[t]he person conducting the

15   search must be of the same sex as the person searched;" and (4) "[t]he search must be conducted in a

16   private area where it cannot be observed by persons not participating in the search."  1998 Policy at

17   8.  Defendants claim that the strip search section of the training bulletin cannot be read

18   independently of the entire bulletin; specifically, defendants claim that a strip search may be

19   performed only after the requirements of searches incident to arrest are met.  The section entitled

20   "Searches Incident to an Arrest" of the OPD Training Bulletin, which appears on the page previous

21   to the section on strip searches, states that "[w]hen an officer has probable cause to believe that

22   contraband is on a person, an officer can search that person."  Id. at 7.  Plaintiffs provide no support

23   for their argument that the sections of the training bulletin may be, or necessarily are, read

24   independently of one another.  The court finds that the sections of the bulletin must be read together,

25   and therefore the 1998 OPD Policy does not violate the requirement that strip searches be performed

26   only with probable cause.[8]  The court notes, however, that pursuant to Way v. County of Ventura,

27   445 F.3d 1157 (9th Cir. 2006), and Edgerly, 495 F.3d at 656 n.17, this Circuit has clearly held since

28

1   2006 that the inclusion of all drug offenses, without an attempt to distinguish under the influence

2   charges from distribution charges, would not pass muster.

3          Plaintiffs next argue that the OPD's 1998 Policy permits strip searches of arrestees in public,

4   and therefore, fails to protect an arrestee's Fourth Amendment right to physical privacy.  The "place

5   in which [a search] is conducted" is one of the factors the courts must consider in determining the

6   reasonableness of a search.  Bell, 441 U.S. at 559.  Plaintiffs cite to a number of cases outside the

7   Ninth Circuit that found public strip searches to be unconstitutional for want of privacy.  See, e.g.,

8   Iskander v. Village of Forest Park, 690 F.2d 126 (7th Cir. 1982); Logan v. Shealy, 660 F.2d 1007

9   (4th Cir. 1981); Timberlake by Timberlake v. Benton, 786 F. Supp. 676 (M.D. Tenn. 1992).  The

10  issue of whether the OPD has conducted strip searches in public, and whether OPD officials

11  interpret the policy as permitting strip searches in public, is not before the court at this time.  The

12  court must consider only whether the 1998 Policy itself  violates an arrestee's privacy interests as a

13  matter of law.  The evidence suggests that an arrestee's privacy interests are adequately protected by

14  the policy.  The Training Bulletin's fourth requirement when performing strip searches clearly states

15  that the search must be conducted in a private area, where it cannot be observed by persons not

16  participating in the search.  1998 Policy at 8.  This requirement comports with California Penal Code

17  section 4030(m) and does not justify a finding that the policy violates privacy interests as a matter of

18  law.  However, to the extent that field strip searches are inconsistent with the principles set forth

19  above, they are violative of the Fourth Amendment.

20         Plaintiffs' final argument is that the 1998 Policy is unconstitutional because it permits

21  warrantless strip searches where a warrant is required.  A warrant is required for physical body

22  cavity searches, absent exigent circumstances.  Fuller, 950 F.2d at 1449–50; Schmerber, 384 U.S. at

23  770.  Only physical body cavity searches require a warrant; other strip searches may be performed

24  without a warrant.  See, e.g., United States v. Cameron, 538 F.2d 254, 259 (9th Cir. 1976); People v.

25  Wade,  208 Cal. App. 3d 304, 307 (1989).  Defendants' 1998 Policy plainly states that a physical

26  body cavity search requires a warrant.  1998 Policy at 8.  Therefore, the 1998 Policy is not

27  unconstitutional on these grounds.

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

17

As an additional matter, although the 1998 Policy requires warrants for physical body cavity searches, it does not state that such searches must be performed by a medical professional. California Penal Code section 4030(k) and federal common law require that a physical body cavity search be performed by a medical professional. See Schmerber, 384 U.S. at 771–72; Vaughan, 859 F.2d at 741. Given the policy's silence on the issue, the court must conclude that the policy contains no such requirement. In this respect, the 1998 OPD Policy is unconstitutional and in violation of California law.

In sum, the OPD 1998 strip search Policy is not unconstitutional for any of the reasons put forth by plaintiffs in their motion for partial summary judgment. It is, however, unconstitutional insofar as it allows physical body cavity searches to be performed by someone other than a medical professional.

III.     2004 Policy

Plaintiffs argue that defendants' 2004 strip search Policy is unconstitutional for the same reasons they believe the 1998 strip search Policy is unconstitutional. The court considers these arguments with respect to the 2004 Policy in turn.

Plaintiffs' argument that the 2004 Policy fails to allow for individual suspicion is again unpersuasive. Like the 1998 Policy, the 2004 Policy is not a blanket strip search policy, and therefore allows for the balancing of interests as required by Bell.

Plaintiffs contend that the 2004 Policy similarly allows for strip searches on less than probable cause. While defendants contend that the field strip search section of the 2004 Training Bulletin must be read together with the requirements of the other sections, the language of the 2004 Policy is somewhat contradictory. The Training Bulletin states that "[w]hen an officer has probable cause to believe that contraband is on a person, an officer can search that person." 2004 Policy at 5. However, the section entitled "Strip Searches in the Field" states that a strip search in the field may be conducted when it is "reasonable to believe" that an arrestee is carrying a weapon or contraband. Id. at 6. This language appears to require only reasonable suspicion to conduct a strip search of an

arrestee.  While reasonable suspicion is adequate to justify a strip search in the context of a detention facility when institutional security is a concern, in accordance with the above holding, it is insufficient to justify a strip search in the filed.  Because the language of the 2004 policy is unclear, the court assumes that the policy requires only reasonable suspicion.  In this respect the 2004 OPD strip search Policy is unconstitutional.

Plaintiffs next argue that the 2004 Policy fails to protect an arrestee's Fourth Amendment right to physical privacy.  Again, the court considers the "place in which [a search] is conducted" when determining the reasonableness of a search.  Bell, 441 U.S. at 559.  The 2004 OPD strip search Policy differs from the 1998 Policy with respect to an arrestee's privacy.  While the 1998 Policy states that a strip search must be conducted in a private area where it cannot be observed by others, the 2004 Policy states that "reasonable efforts must be made to provide as much privacy as possible given the circumstances."  2004 Policy at 7 (emphasis omitted).  Although this language seems to protect an arrestee's privacy less effectively, the 2004 Policy also states that visual and physical body cavity searches may never be conducted in the field.  Id.  Therefore, the only type of strip search that is permitted in the field by the 2004 Policy is one that does not rise to the level of a cavity search, and that is only a rearrangement of the clothing.  The test for the constitutionality of a strip search is reasonableness under the circumstances.[9]  Bell, 441 U.S. at 559.  Because the 2004 Policy limits field searches to strip searches and requires "reasonable efforts" to protect a suspect's privacy, the policy does not violate an arrestee's right to privacy as a matter of law.

Plaintiffs again argue that the 2004 Policy is unconstitutional because it permits warrantless strip searches where a warrant is required.  A warrant is required for physical body cavity searches, absent exigent circumstances.  Fuller, 950 F.2d at 1449–50; Schmerber, 384 U.S. at 770.  Other strip searches may be performed without a warrant.  See Wade, 208 Cal. App. 3d at 307; Cameron, 538 F.2d at 259.  Defendants' 2004 Policy plainly states that a physical body cavity search requires a warrant.[10]  2004 Policy at 7.  Therefore, the 2004 Policy is not unconstitutional on these grounds.

In sum, the 2004 OPD strip search Policy is unconstitutional to the extent that it allows strip searches of any kind in the field to be performed on less than probable cause.

IV.     Constitutionality of Individual Searches

Plaintiffs seek summary judgment declaring any search in accordance with either of the OPD policies to be unconstitutional.  The constitutionality of an individual search, however, does not turn solely on the constitutionality of the policy pursuant to which it was performed.  See Kennedy, 901 F.2d at 715.  The Ninth Circuit observed in Kennedy that "a search, although not supportable under an institutional policy, is not per se unconstitutional."  Id.  And in Fuller, the court noted that "[t]he fundamental question under the fourth amendment is whether 'the grounds for a search . . . satisfy objective standards' of reasonableness."  950 F.2d at 1446 (quoting Torres v. Commonwealth of Puerto Rico, 442 U.S. 465, 471 (1979)) (emphasis omitted).  Thus, even if a policy permitting a search passes constitutional muster, an individual search must be evaluated based upon the above standards.  Where a policy permits searches that may be unconstitutional, an individual search must still meet constitutional standards.  Where the officer claims to rely on an unconstitutional policy, the rules regarding qualified immunity apply and liability must depend upon the facts of the particular case.

To the extent that the OPD policies are inconsistent with the foregoing standards, the court must determine the appropriate relief.

V.      Liability

Plaintiffs seek summary judgment on the issue of liability in favor of the plaintiffs.  As noted in the previous section, the court is presently unable to determine the constitutionality of any particular search in the instant case until further evidence is submitted.  To the extent that the court has found certain policies do not meet constitutional standards, defendant Oakland must bring its policies into compliance.

VI.     Objections to Related Case

Defendants argue in one sentence in a footnote that the defendants in Miller v. City of Oakland have not been served or have not yet appeared in the case, and therefore should not be

included in this motion for partial summary judgment.  Plaintiffs note that defendants Oakland and Richard Word filed an answer in <u>Miller</u> on April 19, 2007.  The court therefore finds that the parties in <u>Miller</u> are proper parties to this motion.

VII.   <u>Evidentiary Issues</u>

Defendants ask the court to take judicial notice of two separate sets of documents: 1) the 1998 and 2004 OPD strip search policies, and 2) documents in this case and in <u>Cammerin K. Boyd v. City of Oakland</u>, Case No. 03-3391 JL (N.D. Cal.).  Pursuant to Federal Rule of Evidence 201, the court takes judicial notice of the 1998 and 2004 OPD policies as they are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  <u>See</u> Fed. R. Evid. 201(b)(2); <u>see also</u> <u>Hott v. City of San Jose</u>, 92 F. Supp. 2d 996, 998 (N.D. Cal. 2000) (Fogel, J.) (holding the court may take judicial notice of relevant documents).  Plaintiffs have not objected to defendants' request for judicial notice.  Accordingly, the court GRANTS the defendants' request for judicial notice of the OPD policies.  The court declines to take judicial notice of the second set of documents because it has not considered them here.

Defendants have submitted a separate statement of genuine issues to which plaintiffs object. Because the court has not considered this statement, the court need not address plaintiffs' objections at this time.

/////
/////
/////
/////
/////
/////
/////
/////

**UNITED STATES DISTRICT COURT**
For the Northern District of California

21

UNITED STATES DISTRICT COURT
For the Northern District of California

1  CONCLUSION

2       For the reasons stated above, the court GRANTS IN PART plaintiffs' motion for partial

3  summary judgment with respect to the request for declaratory relief that the 1998 and 2004 OPD

4  policies are unconstitutional in certain respects, and DENIES the motion for summary judgment on

5  liability and declaratory relief on the individual searches at issue.

6       The parties shall arrange a case management conference with the court to discuss the

7  remedies necessary to comply with this order and for further proceedings in this and the other related

8  cases.

9       IT IS SO ORDERED.

10  Dated: March 27, 2008

11                                        MARILYN HALL PATEL
                                          United States District Court Judge
                                          Northern District of California

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

22

### ENDNOTES

1.      The four related cases are Taylor v. City of Oakland, C 04-4843 MHP; Rider v. City of Oakland, C 05-3204 MHP; Moore v. City of Oakland, C 06-2426 MHP; and Miller v. City of Oakland, C 07-1773 MHP.

2.      Unless otherwise noted, all facts are taken from the first amended complaint (the "Complaint" or "FAC").

3.      This list of defendants includes defendants from Foster v. City of Oakland, Case No. C 05-3110 MHP; Taylor v. City of Oakland, C 04-4843 MHP; Rider v. City of Oakland, C 05-3204 MHP; Moore v. City of Oakland, C 06-2426 MHP; and Miller v. City of Oakland, C 07-1773 MHP.

4.      The words "Training Bulletin," "Bulletin" and "policy" are used interchangeably in this order.

5.      The court understands "in the field" to mean a search conducted outside the privacy of a police station or detention center, contrary to plaintiffs' repeated implication that "in the field" is synonymous with "in public."  Former OPD Chief Richard Word's internal communication indicates that an appropriate place for a field search would be inside an unoccupied private or public restroom; it would be a stretch to characterize a search conducted in such surroundings as a search "in public."  Nisenbaum Dec., Exh. A at 33.

6.      Since, as can be seen from this sentence, the term "strip search" has been used to denote a wide variety of search practices varying in their degree of intrusiveness, this court, as stated above, uses the California Penal Code definitions.

7.      In some rare instances, the probable cause for the arrest will also provide probable cause for the invasive search.

8.      Despite the contradictory language with respect to the requisite level of suspicion in the 2004 Policy discussed below in section III of this order, the 2004 Policy more clearly suggests that the separate sections of the Training Bulletin must be read together by defining the requirements for "strip searches *incident to arrest*."  2004 Policy at 6 (emphasis added).  This suggests that strip searches may only be performed when the requirements for searches incident to arrest are met. While the 1998 Policy does not make this clear on its face, plaintiffs have presented no evidence to the contrary, and the court accepts defendants' argument that the sections must be read together.

9.      While the Fourth Amendment requirement for conducting a strip search is reasonableness under the circumstances, California Penal Code section 4030(m) appears to require strict privacy: "[a]ll strip, visual and physical body cavity searches shall be conducted in an area of privacy so that the search cannot be observed by persons not participating in the search."

10.      The 2004 OPD Policy notes in the same sentence that a physical body cavity search can only be conducted by an authorized medical professional.  2004 Policy at 7.

UNITED STATES DISTRICT COURT
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28