UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARNELL FOSTER, et al., | **MEMORANDUM AND ORDER**<br>**Re: Plaintiffs' Renewed Motion for Class Certification** |
| Plaintiffs, | |
| v. | |
| CITY OF OAKLAND, et al., | **No. C 05-3110 MHP** |
| Defendants. | |

This Document Relates To:

| | |
|---|---|
| JAMES TAYLOR, et al., | No. C 04-4843 MHP |
| Plaintiffs, | |
| v. | |
| CITY OF OAKLAND, et al., | |
| Defendants. | |
| JIMMY RIDER, et al., | No. C 05-3204 MHP |
| Plaintiffs, | |
| v. | |
| CITY OF OAKLAND, et al., | |
| Defendants. | |

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

| | |
|---|---|
| TYRONE MOORE, | No. C 06-2426 MHP |
| Plaintiff, | |
| v. | |
| CITY OF OAKLAND, et al., | |
| Defendants. | |
| JEFFRIE MILLER, et al., | No. C 07-1773 MHP |
| Plaintiffs, | |
| v. | |
| CITY OF OAKLAND, et al., | |
| Defendants. | |
| DAVID WARD, et al., | No. C 07-4179 MHP |
| Plaintiffs, | |
| v. | |
| CITY OF OAKLAND, et al., | |
| Defendants. | |
| JOHN SMITH, et al., | No. C 07-6298 MHP |
| Plaintiffs, | |
| v. | |
| CITY OF OAKLAND, et al., | |
| Defendants. | |
| TERRELL TURNER, et al., | No. C 08-3114 MHP |
| Plaintiffs, | |
| v. | |
| CITY OF OAKLAND, et al., | |
| Defendants. | |

2

| | |
|---|---|
| LAWRENCE COLEY, et al., | No. C 08-4255 MHP |
| Plaintiffs, | |
| v. | |
| CITY OF OAKLAND, et al., | |
| Defendants. | |

Plaintiffs Darnell Foster, Rafael Duarte, and Yancie Young brought this action pursuant to 28 U.S.C., section 1983, against the following defendants: the City of Oakland ("Oakland"); Richard Word, individually and in his capacity as the Oakland Chief of Police; Oakland police officers J. Festag and William Bergeron, individually and in their official capacities as police officers; and Does 1-25. Plaintiffs allege that defendants violated plaintiffs' constitutional rights through a policy and practice of performing strip searches and body-cavity searches in public. Plaintiffs seek both injunctive relief and damages. This case, Foster v. City of Oakland, Case No. C 05-3110 MHP, has been related to eight similar cases pending in the Northern District of California, and this order applies to each of them.[1] Now before the court is plaintiffs' renewed motion for class certification. After considering the parties' arguments and submissions and for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND

I.  The Parties

    A.  Plaintiffs

The plaintiffs in Foster and each of the eight related cases allege that they have suffered injuries to their civil rights as a result of strip searches, visual body cavity searches, or physical body cavity searches administered in public by Oakland police officers at some time between August 1, 2003, and the present. A detailed description of the allegations of Foster, Duarte, and Young may be found in the court's March 27, 2008, order partially granting and partially denying plaintiffs' partial motion for summary judgment. See Docket No. 63 at 2-5. The total number of named plaintiffs in the nine cases is forty. In addition, plaintiffs state that there are eleven class members who they

3

have identified but not yet named. Mot. at 10.² One of the forty named plaintiffs, James Taylor (No. C 04-4843 MHP), filed suit based upon a search that occurred in November 2002, about one year prior to the period included in the class definition. Of the thirty-nine remaining named plaintiffs, thirty-eight identify themselves as African-American and one (Duarte) identifies himself as Latino.

### B. Defendants

Defendant Oakland is a municipal corporation that, among other things, operates the Oakland Police Department ("OPD") and employs the other defendants. Plaintiffs have variously named current Chief of Police Wayne Tucker in his official capacity, former Chief of Police Richard Word in both his individual and official capacities, and numerous individual Oakland police officers in both their individual and official capacities.

## II. The Incidents

Each named plaintiff in the nine related cases alleges that he was subjected to at least one strip search. Twelve named plaintiffs allege that they were subjected to at least one visual body cavity search. See Mot. at 8-9.³ Thirteen named plaintiffs allege they were subjected to at least one physical body cavity search. See id. These groups overlap with one another: some plaintiffs allege they were subjected to just one type of search, while others allege they were subjected to two or even all three of the different search techniques. See id. The "type of search" conducted on each plaintiff varies from plaintiff to plaintiff. The various types include: "unlawful detention," "visible public strip search," "manipulation of testicles," "manipulation of genital cavity," "manipulation of anal cavity," "anal cavity penetration," and combinations of these types. See Sherwin Dec., Exh. A. Some but not all of the plaintiffs had outstanding warrants for their arrest at the time they were subjected to search. Some but not all were on probation or parole and it remains to be determined whether the detaining officers knew whether the subjects were on probation or parole. Numerous officers are alleged to have been involved in the various strip searches, but no single officer was involved in all or even most of the searches. See id.⁴

4

### III.  Relevant Procedural History

Plaintiffs Foster and Duarte filed the present action on August 1, 2005. Pursuant to stipulations, plaintiffs filed an amended complaint on September 22, 2005, adding plaintiff Young. Plaintiffs' motion to certify a class was denied on January 27, 2007, for failure to satisfy the requirement of numerosity. Docket No. 42 ("January 2007 Order"). At that time, there were three related cases,[5] and plaintiffs had identified sixteen potential class members, almost all of whom lived in Oakland.

On March 27, 2008, the court partially granted and partially denied plaintiffs' partial motion for summary judgment. Docket No. 63 ("March 2008 MSJ Order"). Plaintiffs moved for partial summary judgment on the following grounds: declaratory relief that the OPD's 1998 strip search policy was unconstitutional; declaratory relief that the 2004 amended policy was unconstitutional; judgment that any search in accordance with either of the policies was unconstitutional; and summary judgment on the issue of liability in favor of plaintiffs.[6] The court held the 1998 policy to be unconstitutional insofar as it allowed physical body cavity searches to be performed by someone other than a medical professional. Id. at 18. The 2004 policy was found to be unconstitutional to the extent that it allowed strip searches of any kind to be performed in the field on less than probable cause. Id. at 19. The other parts of plaintiffs' motion for summary judgment were denied.

On September 9, 2008, plaintiffs filed the instant renewed motion for class certification. Since the court's denial of plaintiffs' motion to certify a class in January 2007, five new cases have been related to this case,[7] bringing the total number of named plaintiffs meeting plaintiffs' proposed class definition to thirty-nine.

### LEGAL STANDARD

A class may be certified in a case that meets the four prerequisites enumerated in Rule 23(a) and at least one of the requirements of Rule 23(b). Fed. R. Civ. P. 23. Under Rule 23(a), the party seeking class certification must establish numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). In addition to the explicit requirements set out by Rule 23(a),

the class definition must set forth a class which is adequately defined and clearly ascertainable. See DeBremaecker v. Short, 433 F.2d 733, 734 (5th Cir. 1970).

The party seeking class certification bears the burden of establishing that the requirements of Rule 23(a) and (b) have been met. Zinser v. Accufix Research Inst., 253 F.3d 1180, 1186 (9th Cir. 2001), amended by 273 F.3d 1266 (9th Cir. 2001); Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). When adjudicating a motion for class certification, the court accepts the allegations in the complaint as true so long as those allegations are sufficiently specific to permit an informed assessment as to whether the requirements of Rule 23 have been satisfied. Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir. 1975). The merits of the class members' substantive claims are generally irrelevant to this inquiry. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974); see also Moore v. Hughes Helicopters, Inc., 708 F.2d 475, 480 (9th Cir. 1983).

DISCUSSION

A proposed class cannot be certified unless it meets all four prerequisites of Rule 23(a), and meets at least one requirement of Rule 23(b).

I.   Rule 23(a) Numerosity

When plaintiffs brought their first motion to certify, their proposed class did not meet the numerosity requirement. Five additional cases have been filed since that time. Plaintiffs note that there are now thirty-nine named plaintiffs who would meet the class definition and further assert that there are eleven more persons who have not yet been named. The numerosity requirement states that a class action is appropriate "only if the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Both plaintiffs and defendants, as well as this court, have taken note of one treatise's observation that "[a] class of 41 or more is usually sufficiently numerous." Moore's Federal Practice § 23.22[1][b]; see January 2007 Order at 8; Mot. at 10; Opp. at 17. However, there is no magic number. The number of potential class members needed to establish numerosity varies with other factors, such as geographical dispersion and the difficulty in identifying class members. See Moeller v. Taco Bell, 220 F.R.D. 604, 608 (N.D. Cal. 2004)

6

1  (Jenkins, J.); Moore's Federal Practice § 23.22[1][a] (noting that no single factor controls); see also
2  Allen v. Isaac, 99 F.R.D. 45 (N.D. Ill. 1983) (deciding that class of 17 satisfied numerosity
3  requirement); Joshlin v. Gannett River States Publ'g Corp., 152 F.R.D. 577, 579 (E.D. Ark. 1993)
4  (deciding that class of 95 failed to satisfy numerosity requirement).

5  Plaintiffs also propose certification of four subclasses. When appropriate, a class may be
6  divided into subclasses that are each treated as a class. Fed. R. Civ. P. 23(c)(5). Yet each subclass
7  "must independently meet the requirements of Rule 23 for the maintenance of a class action." Estate
8  of Felts v. Genworth Life Ins. Co., 250 F.R.D. 512 (W.D. Wa. 2008), quoting Betts v. Reliable
9  Collection Agency, Ltd., 659 F.2d 1000, 1005 (9th Cir. 1981). The court must, then, determine not
10 only whether the numerosity requirement is met for the overall class, but whether each subclass
11 meets the requirement.

12 Including the as-of-yet unnamed individuals, the number of individuals so far identified as
13 potential members of each class and subclass are as follows:

14 • Class: 50 individuals (39 named plaintiffs plus 11 other identified individuals);
15 • Subclass (a) (strip searches): 50 individuals;
16 • Subclass (b) (visual body cavity searches): 12 individuals;
17 • Subclass (c) (physical body cavity searches): 13 individuals; and
18 • Subclass (d) (race or national origin): 39 named plaintiffs plus some unspecified
19 number of individuals identified but not yet named.[8]

20 The claims of each plaintiff involve events that occurred in Oakland, so the potential for
21 geographic dispersion is low. There does not seem to be any particular difficulty in identifying
22 individuals with similar claims, since they have continued to come forward at a relatively steady
23 pace. The nature of the alleged offense distinguishes it from the sort of situation in which an
24 individual may not know that his rights have potentially been violated. Based on the specific factors
25 of this case, neither the proposed class nor any of the proposed subclasses meet the Rule 23(a)
26 numerosity prerequisite. For this reason alone, the instant motion should be denied. Lest plaintiffs
27 interpret this finding as an invitation to file a third request for class certification in the event that
28

7

1 more plaintiffs come forward, it is useful to note that the requirements of Rule 23(b) are not met
2 either.

II. Rule 23(b)

To be certified, a class definition must meet at least one of Rule 23(b)'s enumerated requirements. As explained below, none are met in this case.

### A.     Rule 23(b)(1)

A class action may be certified under Rule 23(b)(1) if the prosecution of separate actions would have the effect of establishing incompatible standards of conduct for the opposing party or if separate actions would impair individual class members' interests. Fed. R. Civ. P. 23(b)(1); see generally Wright & Miller, Civil Practice & Procedure, §§ 1773 & 1774. In this case, there is no danger of either. By its nature, any standard of conduct set forth for the OPD and its officers will be a standard of general applicability. The individual right to be free from unlawful strip searches does not vary from person to person. Plaintiffs raise the specter of multiple courts issuing conflicting injunctions. There is no real danger of such occurring in this case. All incidents at issue have occurred in Oakland, and every action has been filed in the Northern District of California and been related to the others. Hypothetically, some related claims could be filed in state court, and the state and federal courts could issue conflicting injunctions. Such a possibility exists regardless of whether or not this action is treated on a class action basis. There is, in this case, no real danger of establishing incompatible standards of conduct.

Neither is there a concern that separate actions would impair individual class members' interests. The individual claims arise from very different individual factual circumstances. This is not an instance in which the disposition of one plaintiff's case will in some way impair the ability of other plaintiffs to protect their interests. Classes are typically certified under Rule 23(b)(1)(B) when a common fund of a limited amount exists to settle claims and the separate adjudication of claims may leave those plaintiffs who later establish a right to payment with no funds left to satisfy that right. See, e.g., In re Drexel Burnham Group, 960 F.2d 285, 292 (2d Cir. 1992) (certifying class

8

1  where limited amount of funds was available to pay victims).  Cases not involving a common fund
2  but rather some other common interest have been found to merit class treatment in accordance with
3  this rule.  See, e.g., Robertson v. Nat'l Basketball Ass'n, 556 F.2d 682, 685 (2d Cir. 1977)
4  (certifying class in antitrust suit where preventing merger of two competing basketball leagues
5  would affect interests of all professional basketball players).  A judgment for one plaintiff against
6  the City of Oakland would not affect a different plaintiff's ability to collect on his own judgment.

### B. Rule 23(b)(2)

This rule is limited to cases in which "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Legal remedies which are *incidental* to a request for injunctive relief may be included as a part of the claim. Williams v. Owens-Illinois, Inc., 665 F.2d 918, 928 (9th Cir. 1982); see also Moeller, 220 F.R.D. at 610 (certifying class where the plaintiffs sought, in addition to injunctive relief, minimal statutory damages to which they were entitled without proof of actual injury).  The Foster plaintiffs and plaintiffs in the related actions pray for substantial sums.  The Foster plaintiffs have asked for $1 million each in general damages—plus special damages, punitive damages, attorneys' fees, and costs.  See FAC at 17-18.  There is no dispute that injunctive relief is important to plaintiffs, but the request for damages is quite important as well.  In any event, damages are not incidental, and the determination of damages would require the sort of individualized proof not contemplated in a class certified under this rule, which unlike Rule 23(b)(3) does not contain an opt-out provision.

Furthermore, class treatment is unnecessary to provide injunctive relief that would protect the rights of the class as a whole.  A grant of injunctive relief to one plaintiff that alters OPD's policies and practices would protect all purported class members.

### C. Rule 23(b)(3)

Class certification pursuant to this rule requires that the court determine "that the questions of law or fact common to the class members predominate . . ." and that a class action is "superior to other available methods" for fairly adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).

9

1 Plaintiffs' moving papers observe that blanket strip search cases such as <u>Bull v. City and County of
2 San Francisco</u>, 539 F.3d 1193 (9th Cir. 2008), have been found suitable for class action treatment.
3 In the blanket strip search cases cited by plaintiffs, the complainants challenged a general policy to
4 strip search in a particular way all individuals meeting certain criteria. In such a case, a defendant's
5 liability for violating the law can be determined on a class-wide basis. Plaintiffs in the related cases
6 at bar challenge individual searches conducted under specific attendant circumstances. The cases
7 involve individual alleged incidents in different parts of Oakland occurring over the course of
8 several years and involving many different police officers. Some plaintiffs had outstanding arrest
9 warrants; some did not. Some of the plaintiffs were on parole or probation; some were not. The
10 types of strip search allegedly performed on plaintiffs varies widely, from anal body cavity searches
11 to the lifting of the waistband or their undergarments. Determinations of liability cannot be made
12 without significant inquiry into the attendant facts of each alleged incident.

13 The fact that the alleged strip searches took place at a time when unconstitutional policies
14 were in effect is not enough in itself to establish that any particular search was unconstitutional. As
15 this court previously noted, the Ninth Circuit has observed that "a search, although not supportable
16 under an institutional policy, is not per se unconstitutional." <u>Kennedy v. Los Angeles Police Dept.</u>,
17 901 F.2d 702, 715 (9th Cir. 1990), <u>abrogated on other grounds by</u> <u>Hunter v. Bryant</u>, 502 U.S. 224
18 (1991); <u>see</u> March 2008 MSJ Order at 20. There is a factual dispute over whether many or all of the
19 strip searches took place, and a finding that a particular search took place has no necessary relation
20 to whether any other search took place. Similarly, a finding that a given search was undertaken, for
21 example, with independent probable cause does not dispose of the question of whether any other
22 given search was or was not conducted with independent probable cause. Since the test for
23 constitutionality involves several fact-intensive inquiries specific to each incident, common
24 questions plainly do not predominate.

25 This is not to say that these cases involve no common questions of law or fact. Once
26 individual cases are brought to trial, it may become apparent that there is a basis for *Monell* claims
27 against the municipal defendants. See <u>Monell v. Dep't of Social Services of City of New York</u>, 436
28 U.S. 658, 690 (1978) (holding that a municipality may be subject to section 1983 liability where

official policy or custom causes a constitutional tort). If so, a *Monell* hearing may be held. Class certification would not, however, assist with such a determination.

CONCLUSION

    For the foregoing reasons, plaintiffs' renewed motion for class certification is DENIED.

    IT IS SO ORDERED.

Dated: January 12, 2009

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

**ENDNOTES**

1. The eight related cases are <u>Taylor v. City of Oakland</u>, C 04-4843 MHP; <u>Rider v. City of Oakland</u>, C 05-3204 MHP; <u>Moore v. City of Oakland</u>, C 06-2426 MHP; <u>Miller v. City of Oakland</u>, C 07-1773 MHP; <u>Ward v. City of Oakland</u>, C 07-4179 MHP; <u>Smith v. City of Oakland</u>, C 07-6298; <u>Turner v. City of Oakland</u>, C 08-3114 MHP; and <u>Coley v. City of Oakland</u>, C 08-4255 MHP.

2. Plaintiffs' moving papers state that "Defendants" have identified eleven additional individuals, but it is clear from the context that this was an error.

3. This figure and subsequent figures in this order do not include James Taylor, since Taylor cannot cannot be counted for the purposes of determining whether to grant class certification.

4. The record is incomplete at this time. Many of the named plaintiffs apparently cannot identify some or all of the officers who searched them and have therefore referred to those officers as "Does." Regarding several plaintiffs, it is also apparently unknown to plaintiffs' counsel at the present whether there was an outstanding warrant for arrest for the plaintiff in question or whether the plaintiff in question was on probation or parole. <u>See</u> Sherwin Dec., Exh. A.

5. <u>Taylor v. City of Oakland</u>, C 04-4843 MHP; <u>Rider v. City of Oakland</u>, C 05-3204 MHP; and <u>Moore v. City of Oakland</u>, C 06-2426 MHP.

6. The provisions of the 1998 and 2004 policies are described in the court's order of March 27, 2008, at 6-7.

7. <u>Miller v. City of Oakland</u>, C 07-1773 MHP; <u>Ward v. City of Oakland</u>, C 07-4179 MHP; <u>Smith v. City of Oakland</u>, C 07-6298; <u>Turner v. City of Oakland</u>, C 08-3114 MHP; and <u>Coley v. City of Oakland</u>, C 08-4255 MHP.

8. There is, as of yet, no evidence or allegation concerning the race or national origin of the eleven identified individuals who are not named plaintiffs.